UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

ALINE C. DUPONT,            )
                            )
        Plaintiff           )
                            )
    v.                      )   2:11-cv-00209-JAW
                            )
CITY OF BIDDEFORD, *et al.*,)
                            )
        Defendants          )

RECOMMENDED DECISION ON
MOTION TO DISMISS AMENDED COMPLAINT

Plaintiff Aline C. Dupont alleges that the Defendants, the City of Biddeford, the Biddeford Police Department, and the Biddeford Police Commissioner, violated her constitutional rights and state statutory rights in connection with her removal from office as a deputy clerk of the Biddeford District Court. The Defendants, en bloc, have filed a motion requesting the dismissal of Dupont's action. For reasons that follow, I recommend that the Court grant the motion, dismiss Dupont's constitutional claims with prejudice, and dismiss her state law claim without prejudice.

**MATERIAL ALLEGATIONS**

According to the allegations, a member of the Biddeford police force stopped Ms. Dupont's vehicle while Ms. Dupont was on her way to work at the Biddeford District Court on July 20, 2009. Ms. Dupont received citations for operating without a seatbelt and for the illegal attachment of a license plate. During the stop, Dupont called her work and let it be known to the officer conducting the stop that Dupont was a court employee. Dupont was difficult during the stop and the encounter was captured on the officer's dashboard camera. Later that day, Deputy Chief Joanne Fisk of the Biddeford Police Department called Kathy Jones, Clerk of the

Biddeford District Court, and invited Ms. Jones to come to the station to observe a video of the traffic stop. Allegedly, Ms. Jones obtained a copy of the video and shared it with others within the court system. In August 2009, Dupont received notice that she was being charged by her employer with a violation of the Court's code of conduct. Ultimately, Dupont lost her job due to her injudicious conduct on July 20, 2009. She alleges that her behavior on that day was influenced by post-traumatic stress disorder and anxiety. (See, generally, Compl., Doc. No. 1; Am. Compl., Doc. No. 5; Obj. to Mot. to Dismiss, Doc. No .13.)

Dupont maintains that the Defendants are liable to her for violating her privacy rights under Maine law and under the United States Constitution. Dupont cites the Criminal History Record Information Act, 16 M.R.S. § 614, and contends that the dissemination of the video to her employer constituted an "unwarranted invasion of personal privacy" under subsection 1(C) of that provision. Dupont also cites 16 M.R.S. § 609 in her objection to the motion, which provision makes it a class E crime to unlawfully disseminate criminal history information. Dupont additionally alleges that the dissemination of the video violated her rights under the Fifth Amendment, which she describes as a right to privacy and a right to due process of law. She complains that she has lost her livelihood as a state employee as a consequence of Defendant's alleged transgressions and she seeks both pecuniary and non-pecuniary damages, including punitive damages.

## DISCUSSION

Defendants assert that Dupont has not alleged a viable federal claim. They note that the alleged violation of state law would not give rise to a constitutional cause of action. (Mot. to Dismiss at 3-4.) They additionally maintain that, even if a violation of Maine's Criminal History Record Information Act is articulated in the pleadings, Dupont has no private cause of action for

violation of the Act. (Id. at 4-6.) The matter is within this Court's subject-matter jurisdiction solely on the basis of the constitutional claim, which arises under 42 U.S.C. § 1983. In the absence of that claim, this Court would lack jurisdiction to determine the state law question due to the lack of diversity between the parties. The Court should grant Defendants' motion for reasons that follow, but should dismiss the state law claim without prejudice so that Dupont may plead that cause before the state courts, assuming she has preserved it under the Maine Tort Claims Act.

A.  **The Dismissal Standard under Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." To decide a motion advanced on this basis, the Court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that can be supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).

When the plaintiff is a pro se litigant, the Court will review his or her complaint subject to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Additionally, the pleadings of pro se plaintiffs are generally interpreted in light of supplemental submissions, such as any response to a motion to dismiss. Wall v. Dion, 257 F. Supp. 2d 316, 318 (D. Me. 2003). In some circumstances, if it appears that a pro se litigant might be able to plead adequate facts if he or she better understood the applicable law, the Court may provide some opportunity to understand what the law requires, along with an opportunity to supplement the pleadings, all in order to avoid a scenario in which a pro se plaintiff's claims are summarily dismissed with prejudice based on a failure to plead sufficient

facts. Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 20 (1st Cir. 2004); Cote v. Maloney, 152 Fed. Appx. 6, 8 (1st Cir. 2005) (not for publication).

**B.      Privacy and Due Process**

Ms. Dupont correctly identifies 42 U.S.C. § 1983 as the federal statute that would authorize suit in federal court for the deprivation of a federal right by a state actor.[1] However, she incorrectly identifies the Fifth Amendment as a basis for a constitutional claim against state actors. The Fifth Amendment restrains only the federal government. It is the Fourteenth Amendment that preserves constitutional rights against state encroachment. Nevertheless, the Fourteenth Amendment, like the Fifth Amendment, ensures that life, liberty, or property will not be taken by government action without due process of law. Dupont's Section 1983 claim will be construed as a claim under the Fourteenth Amendment.

The United States Supreme Court has recognized that a constitutional right of privacy attaches to the concept of liberty protected by the Due Process Clause and that this privacy protection extends beyond the expectation of privacy associated with search and seizure law. This concept of privacy underlies important Supreme Court opinions, including those addressed to abortion rights and the privacy accorded to intimate relations. Whalen v. Roe, 429 U.S. 589, 598-600 & nn. 23-26 (1977) (collecting cases). Although the Court has generalized, in dicta, that this right restrains governmental "disclosure of personal matters" as well as governmental intrusion into such matters, id. at 599, it also has expressly held that the Constitution's protection of individual liberty does not extend to reputational injury and that recourse for such an injury

---

[1] Section 1983 enables a person to pursue a civil action to vindicate federal constitutional and federal statutory rights when he or she has suffered a deprivation of those rights at the hands of a state actor. 42 U.S.C. § 1983. However, other than providing a cause of action, the statute does not confer any substantive rights; the rights that are vindicated in the action have to arise under another federal statute or constitutional provision.

4

must be sought through state tort law.[2] Paul v. Davis, 424 U.S. 693, 711-13 (1976). These precedents reflect that the Fourteenth Amendment provides substantive protection to a limited class of "fundamental" rights that are deemed "implicit in the concept of ordered liberty." Id. at 713. For private information to fall into this category, it must, at least, be highly personal or intimate information; not every embarrassing fact that one would prefer to keep quiet falls into this category. Where the dividing line falls is uncertain, but it has been recognized that a claim of substantive due process requires conduct so egregious as to "shock the conscience." Martinez v. Hongyi Cui, 608 F.3d 54, 64 (1st Cir. 2010). The privacy that Dupont seeks to enforce falls well outside of this protected zone. That a law enforcement officer might speak to a court official concerning unprofessional conduct on the part of a court employee is not in the least surprising, let alone shocking.

In Paul v. Davis, a police department distributed flyers to hundreds of merchants, providing in the flyers photographs and names of individuals recently arrested for shoplifting or "active in various criminal fields in high density shopping areas." 424 U.S. at 695. The plaintiff had recently been arrested and charged with shoplifting, but the charge against him was "filed away" and he had not been convicted when the flyer was distributed. Id. at 696. He alleged that the police deprived him of a right to privacy when they included his picture and name in the flyer. The Court held that the police action did not violate a constitutional privacy interest and that there was no right to procedural due process prior to a defamatory public communication. Id. at 694, 701-702. Discussing precedent associated with political "stigma" or "badges of infamy" imposed by official action, the Court noted that a different analysis could apply when

---

[2] In this case, Dupont has not alleged that Defendants communicated false information about her. Instead, she complains that they shared embarrassing information about her actual conduct. As explained in the body of this recommended decision, the true or false quality of the information is, ultimately, beside the point. The stumbling block for Dupont is that her complaint does not concern highly personal or intimate information about her private life.

5

defamation of an individual resulted in the loss of government employment. Id. at 706. However, as the Court explained, that different analysis considers whether the individual received procedural due process in advance of termination. The Court rejected the proposition that "if a government official defames a person, without more, the procedural requirements of the Due Process Clause of the Fourteenth Amendment are brought into play." Id. at 708.

Subsequent circuit-court opinion demonstrates that any privacy right protecting against the disclosure of personal information is limited to the disclosure of highly private or intimate facts about a person's private life and that this right may give way if disclosure is material to the official task at hand. See, e.g., Harrington v. Almy, 977 F.2d 37, 43 (1st Cir. 1992) (holding that a public employer might gather "highly personal information" about an employee's psychological profile if the employee's "psychological fitness has been put in question"); Stidham v. Peace Officer Stds. & Training, 265 F.3d 1144, 1155 (10th Cir. 2001) (holding that report of alleged rape and assault was "sensitive in nature and considerably stigmatized" the plaintiff, but did not warrant constitutional protection).[3] Against this backdrop, it is clear that Dupont's constitutional privacy claim is not viable. Although Dupont complains that she lost government employment as a result of Defendant's conduct, she does not allege the disclosure of highly personal or intimate information. Thus, no constitutional interest in privacy is implicated.

As for procedural due process, Dupont's action is once more off the mark. Foremost, Dupont fails to allege that her termination was without procedural protections. Moreover, even

---

[3] The Supreme Court recently addressed a challenge to a standard employment background investigation based on a constitutional right of privacy in National Aeronautics and Space Administration v. Nelson, 131 S. Ct. 746 (2011). The background questionnaire asked government contract employees to divulge treatment and counseling for recent illegal drug use. The Court assumed, without deciding, that such inquiries implicated the Whalen interest in avoiding disclosure of personal information. Id. at 751. The Court held that the inquiries were reasonable, in light of the government interest in managing its internal operations. Id. at 759. In a concurring opinion, Justice Scalia, joined by Justice Thomas, explained why they believe that "a federal constitutional right to 'informational privacy' does not exist." Id. at 764 (Scalia, J., dissenting). There is no reason to assume that a constitutional privacy right is implicated in the instant case as the instant case does not involve a governmental demand for private information. This case involves public conduct put on display during a traffic stop.

if the Court were to entertain the idea that Dupont did not receive adequate pre-termination procedure, it was not the obligation of Defendants to provide her with such process. That was an obligation owed by Dupont's employer. Dupont had a right to "some kind of hearing" prior to her discharge from employment, Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985), but she did not have a constitutional right to muzzle the Biddeford police force to prevent its dissemination of information concerning her conduct during a traffic stop.

It deserves mention that there is a competing constitutional interest in accommodating speech related to public matters. In this vein, as the Seventh Circuit recently recognized: "The Supreme Court . . . has seemed more interested in limiting the right of informational privacy than in its recognition and enforcement." Wolfe v. Schaefer, 619 F.3d 782, 784 (7th Cir. 2010). In Wolfe, an attorney politicking for public office was stymied in his efforts when the incumbent state attorney made a public disclosure of the fact that the plaintiff was under investigation for certain alleged violations of law. Id. at 783. The Seventh Circuit affirmed the dismissal of a due process (privacy) claim, identifying as one ground for decision the fact that the proposed right of privacy runs headlong into the First Amendment. Id. at 785-86. Turning to the facts of the instant case, it cannot reasonably be denied that the state court system—if not the public at large—has an interest in the integrity of a court employee. According to the materials attached to the complaint, the state court system found that Dupont's conduct was a serious breach of its code of conduct. Indeed, Dupont's own pleadings indicated that there was a perception that she had attempted to use her status as a court employee to influence the officer's charging decision.

Quite apart from the abstract legal concern about the tension between informational privacy and first amendment freedoms, there is also a practical concern for effective police investigation. If propositions such as the one espoused by Dupont were incorporated into civil

rights jurisprudence, it would have a profoundly negative impact on official investigative work. Investigators routinely share information with other officials and private parties in order to elicit additional information in support of an investigation. As the Seventh Circuit observed in Wolfe, a prohibition on the exchange of information concerning the existence of investigations and the identity of the subjects of such investigations would effectively "scotch the investigations." Id. at 786. Here, Defendants did no more than share information about Dupont's conduct with other state officials who had an interest in that information. There is nothing remotely unconstitutional about that kind of communication.

Ultimately, because the topic of Dupont's constitutional privacy claim is not highly personal or intimate, there can be no serious suggestion that official disclosure of the information ran afoul of the Fourteenth Amendment. It simply was not contrary to a system of ordered liberty for police officers to supply Dupont's court employer with information concerning the manner by which Dupont conducted herself during a traffic stop. Additionally, because Defendants were not Dupont's employer, the fact that the disclosure caused Dupont's termination does expose Defendants to a procedural due process claim.

## C. Allegations of Disability

Dupont alleges that her behavior during the traffic stop was influenced by a mental health condition, but she does not explain why that allegation would change the assessment of whether Defendants deprived her of a constitutional right. Because Defendants were not Dupont's employer, there is no exposure for them under federal employment law. Nor does the complaint divulge any basis for inferring that Defendants would have been aware of Dupont's alleged condition, let alone why it would require special accommodation or what that accommodation would be. Dupont's only discussion of this fact in her opposition memorandum is directed at

decrying the treatment she received from her employer. (Obj. to Mot. to Dismiss at 4.) Dupont simply fails to articulate any reason why her alleged mental health condition would expose Defendants to liability under the Constitution.

## CONCLUSION

Ms. Dupont's pro se complaint, amended complaint, and objection to the motion to dismiss have all been reviewed and it is apparent that her constitutional theory fails to state a plausible claim for relief under federal law. The allegations do not hold out any reasonable prospect that she has a viable Section 1983 action against Defendants based on the alleged deprivation of due process and/or privacy rights protected by the Constitution. Accordingly, the Court should dismiss the federal claim with prejudice. As for the supplemental state-law claim, the Court should dismiss it without prejudice and leave it to state courts to evaluate the parameters of state privacy law. Flynn v. City of Boston, 140 F.3d 42, 48 (1st Cir. 1998) (counseling dismissal without prejudice of state law claims when court jurisdiction to consider them is merely pendent and where "few economies" arise from a federal court determination); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir.1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.").

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

October 24, 2011